DANIEL K. LAK, ESQ. STATE BAR NO. 216983
LAW OFFICES OF DANIEL K. LAK
18101 VON KARMAN AVE. SUITE 330
IRVINE, CA 92612
PHONE: (949) 225-4477
FAX: (949) 225-4478

Attorney for PLAN B LEISURE, INC., PLAINTIFF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT

OF CALIFORNIA

| | |
|---|---|
| PLAN B LEISURE, INC.,<br><br>PLAINTIFF,<br><br>v.<br><br>HUGH WAIN SWAPP, WORLDPAY US, INC. US, INC., COMMUNITY MERCHANT SOLUTIONS, LLC, and DOES 1 THROUGH 10, Inclusive,<br><br>DEFENDANTS(s). | Case No.:  **SACV12 - 1422 ODW (AGRx)**<br><br>**ACTION TO RECOVER DAMAGES FOR VIOLATIONS OF (i) THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S.C SECTIONS 1961-1968; (ii) THE ELECTRONIC FUND TRANSFER ACT. 15 U.S.C 1693; (iii) BREACH OF CONTRACT; (iv) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.** |

PLAN B LEISURE, INC. ("PLAINTIFF") alleges the following:

PLAINTIFF contracted with HUGH WAIN SWAPP, WORLDPAY US, INC. US, INC., and COMMUNITY MERCHANT SOLUTIONS, LLC (collectively, "DEFENDANTS") on February 10, 2011 to manage a direct mail campaign for PLAINTIFF. The direct mail campaign was to consist of (i) 10,000 mailers being sent to (ii) homeowners over the age of thirty five in the Trabuco Canyon area, with (iii) household income over $70,000 for individual households, and (iv) income over $100,000.00 for multiple member households. Additionally, PLAINTIFF

1

instructed DEFENDANTS that the mailers were to be sent to homeowners only, not to apartment residents or renters. The direct mail campaign was to begin March of 2011 and the Parties agreed to a $1.00 per item price for a total of $10,000.00.

Payment for the contract was to be as follows: (i) one down payment of $2,450.00 due on February 10, 2011, (ii) one payment of $2,450.00 due upon verification that the 10,000 pieces had been mailed, and (iii) subsequent equal payments of $2,450.00, made on a monthly basis thereafter, until the balance was paid in full.

PLAINTIFF delivered a check to the DEFENDANTS in the amount of $2,450.00 on Febraury 10, 2011. PLAINTIFF also changed its credit and debit card processing company to WORLDPAY US, INC. at the instruction of DEFENDANTS.

In April of 2011, PLAINTIFF became concerned that no direct mail coupons had been brought in to the place of business and contacted DEFENDANTS. At that time, PLAINTIFF was informed by DEFENDANTS that the mailers had not been sent. DEFENDANTS promised PLAINTIFF via email on April 1, 2011, that the mailers would "go out any day now."

DEFENDANTS then proceeded to process the direct mail campaign, three months after the date the parties had agreed upon for performance. In so doing, DEFENDANTS delivered a large majority of the mailings to residents of a nearby apartment complex. Again, in breach of the contract.

On May 3, 2011, PLAINTIFF received a non-sufficient funds notice from WORLDPAY US, INC. PLAINTIFF contacted WORLDPAY US, INC. who in turn informed PLAINTIFF that DEFENDANTS had attempted to electronically debit $2,450.00 from PLAINTIFF's account via an Automated Clearing House (ACH) transaction. WORLDPAY US, INC. informed PLAINTIFF that the transaction was initiated by DEFENDANTS.

PLAINTIFF contacted WORLDPAY US, INC. on May 5, 2011 and spoke with Joseph Shea. Mr. Shea informed PLAINTIFF that WORLDPAY US, INC. had written authorization from PLAINTIFF for the $2,450.00 withdrawal. PLAINTIFF requested a copy of such written authorization, which WORLDPAY US, INC. faxed to PLAINTIFF.

Upon receipt, PLAINTIFF immediately became aware that the "authorization" was fraudulent. Firstly, the signature at the bottom of the form, purporting to be that of Mary Diek, president of PLAINTIFF, misspells Ms. Diek's own name (i.e., the signature on the form is signed "Deek"). Secondly, the bank account information again, purporting to have been supplied by Ms. Diek on the authorization form, is a Union Bank account that had been closed for several years. DEFENDANTS were aware PLAINTIFF's bank was Bank of America, not Union Bank for at least four years.

PLAINTIFF immediately informed Mr. Shea that the authorization was fraudulent. Mr. Shea told PLAINTIFF that "she owed the money to Community Merchant Solutions, LLC anyway" and completely disregarded PLAINTIFF's objections. In fact, WORLDPAY US, INC. attempted on two additional occasions to withdraw the same $2,450.00 (June 22, 2011 and July 20, 2011) from the closed Union Bank account. Each time, PLAINTIFF contacted DEFENDANTS to inform them the authorization was fraudulent and that she had not authorized the transactions. Each time, DEFENDANTS completely disregarded PLAINTIFF's objections and again attempted to withdraw funds using the fraudulent form.

DEFENDANTS's continued attempts to fraudulently withdraw funds from PLAINTIFF's bank account resulted in significant bank fees and overdraft charges being incurred by PLAINTIFF.

Eventually, WORLDPAY US, INC. stopped attempting the ACH withdrawals in the amount of $2,450.00, however, began a process of "skimming" PLAINTIFF's credit card deposits in an attempt to collect the funds purportedly owed to Community Merchant Solutions, LLC.

In fact, from the period of May 2011 through September 2011, WORLDPAY US, INC. "skimmed" a total of over $10,00.00 from credit card and debit card transactions that should have been deposited into PLAINTIFF's bank account.  This again resulted in PLAINTIFF incurring significant bank charges and overdraft fees.

Concerned with DEFENDANTS's fraudulent attempts to withdraw funds and DEFENDANTS's continued "skimming" of PLAINTIFF's deposits, PLAINTIFF terminated the WORLDPAY US, INC. relationship.  WORLDPAY US, INC., in turn, attempted to collect account closing and credit card processing equipment fees from PLAINTIFF.

## CAUSES OF ACTION

I.  VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORANIZATIONS ACT ("RICO"). 18 U.S.C. §§ 1961-1968.

Section 1962 (c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO" or the "Act") prohibits any DEFENDANTS person from operating or managing an enterprise through a pattern of racketeering activity.  18 U.S.C. §§ 1961-1968.

Furthermore, Section 1961 (1) (b) of the Act defines racketeering activity as any act which is indictable under title 18 of the United States Code section 1343, relating to wire fraud.

Here, DEFENDANTS devised a scheme with intent to defraud PLAINTIFF of money. This scheme was carried out by means of a false and fraudulent pretense whereby DEFENDANTS transmitted by means of wire, a communication to a financial institution for the

purposes of executing such scheme.  Therefore, DEFENDANTS are subject to a criminal fine of $1,000,000 and up to thirty (30) years in prison.  18 U.S.C. 1343.

Because DEFENDANTS executed the aforementioned fraudulent scheme in violation of Section 1343 of Title 18 of the U.S. Code, DEFENDANTS are also in violation of the RICO Act and are subject to additional criminal penalties as well as treble damages and attorney's fees.

II. VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT. 15 U.S.C 1693.

Section 205.3 (b) of the Electronic Fund Transfer Act defines an electronic fund transfer as the following:

> "any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account."

Section 205 (b) (2) further expands the definition of electronic fund transfer to include a check, or similar paper instrument, that is used as a source of information to initiate a one-time electronic fund transfer from a customer's account.

Furthermore, Section 205(b)(2)(ii) requires that the person initiating an electronic fund transfer must provide a notice that the transaction will or may be processed as an EFT, and obtain a consumer's authorization for each transfer.

Here, DEFENDANTS attempted to initiate an electronic funds transfer from PLAINTIFF's bank account on three separate occasions.  At no time, however, did DEFENDANTS either (i) give notice to PLAINTIFF that the transactions would be processed or (ii) obtain PLAINTIFF's authorization for the transfer.  In fact, DEFENDANTS proceeded to initiate the transfers despite PLAINTIFF's express statements that she did not authorize any such transfer.

Therefore, DEFENDANTS have violated the Electronic Fund Transfer Act on three separate occasions.  As a result, DEFENDANTS are subject to potential criminal liability, general and specific damages, PLAINTIFF's attorney's fees, and potential exclusion from participation in the Federal Automated Clearing House (ACH).

III. BREACH OF CONTRACT AND BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

It is a well established principal of law that every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. Marsu, B.V. v. Walt Disney Co., 185 F.3d 932 (9th Cir. 1999) quoting Carma Developers, Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 371, 826 P.2d 710 (1992).  Additionally, the covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith.  Id. at 372.

Here, PLAINTIFF contracted with DEFENDANTS to manage a direct mail campaign and process credit and debit card transactions.  However, DEFENDANTS failed to perform the direct mail campaign in a timely manner, waiting for two months after the previously agreed upon completion date to complete the mailing campaign. DEFENDANTS further breached the contract in mailing to apartment complexes instead of homeowners.

Finally, DEFENDANTS breached the covenant of good faith and fair dealing by "skimming" bank deposits and shortchanging PLAINTIFF deposits from credit card and debit card transactions.

//

//

//

ACTION FOR DAMAGES FOR VIOLATION OF 18 U.S.C. SECTIONS 1961-1968 (RICO).

**PRAYER**:

WHEREFORE now PLAINTIFF prays this Court to award the following against DEFENDANTS:

1. Actual damages in an amount to be determined at trial;

2. Punitive damages in the amount of $5,000,000.00;

3. Reasonable Attorneys Fees in an amount to be determined at trial;

4. Any other remedy deemed suitable against DEFENDANTS by this Court.

DATED:     July 6, 2012                          DANIEL K. LAK
                                                 Attorney At Law


                                                 By: _____
                                                     Daniel K. Lak, Esq.

Attorney for PLAINTIFF